# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles R. Norgle | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C ~~7609~~ 7069 | **DATE** | 6/8/2001 |
| **CASE TITLE** | UNITED STATES OF AMERICA ex rel. Rickard vs. JERRY STERNES, WARDEN | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Petitioner's Amended Petition for Habeas Corpus, Section 1983 Civil Rights deprivation and for Writ of Mandamus is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | **Document Number** |
| | No notices required. | | JUN 1 2 2001 | |
| | Notices mailed by judge's staff. | | date docketed | |
| | Notified counsel by telephone. | | | 13 |
| ✓ | Docketing to mail notices. | | docketing deputy initials | |
| ✓ | Mail AO 450 form. | ED-7 FILED FOR DOCKETING | | |
| | Copy to judge/magistrate judge. | ED-7 FILED FOR DOCKETING 01 JUN -8 PH 4: 36 | date mailed notice | |
| EF | 01 JUN 11 AM 9: 22 courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES of AMERICA, ex rel. | ) | |
| CHRISTOPHER RICKARD, | ) | |
| | ) | No. 00 C 7069 |
| Petitioner, | ) | |
| | ) | HONORABLE CHARLES R. NORGLE |
| vs. | ) | |
| | ) | |
| JERRY STERNES, Warden; and | ) | |
| DONALD SNYDER, Director of the | ) | |
| Illinois Department of Corrections, | ) | |
| Respondents. | ) | |

DOCKETED
JUN 1 2 2001

**OPINION AND ORDER**

CHARLES R. NORGLE, Sr., District Judge:

Before the court is Christopher Rickard's pleading styled "Petitioner's Amended Petition for

Habeas Corpus, Section 1983 Civil Rights Deprivation and for Writ of Mandamus." For the

following reasons, Rickard's claims for habeas relief are denied on their merits, the 42 U.S.C § 1983

claims are dismissed, and the petition for writ of mandamus is denied.

## I. BACKGROUND

**A. Procedural Posture:**

This marks the second time this case is before the court. In 1999, Rickard brought a petition

seeking relief under 28 U.S.C. § 2254. (See district court case number 99 C 4457.) The court

determined that Rickard's 1999 habeas petition was second or successive to his 1987 habeas petition,

and needed approval from the court of appeals prior to its filing in the district court. United States

ex rel Rickard v. Roth, 108 F. Supp. 2d 1017, 1020-22 (N.D. Ill. 2000). Consequently, the court

dismissed the petition for lack of subject matter jurisdiction. Id.

Rickard did not appeal the court's dismissal, but presented a motion to the court of appeals seeking authorization for the district court to entertain a second or successive petition for collateral review. See 28 U.S.C. § 2244(b). A one judge panel of the Seventh Circuit considered Rickard's motion, determined that his petition was not second or successive, and dismissed the motion.[1] (See Seventh Circuit's order in appellate docket number 00-3240, attached to Rickard's Am. Pet. as Appx. A.) Rickard then re-filed his habeas petition as a new suit, which received a new district court case number, 00 C 7069. Rickard docketed 00 C 7069 as a habeas petition under § 2254 and paid the $5.00 filing fee for habeas petitions. After Rickard's filing of an amended petition and briefing, the case is set for ruling.

**B.   Factual Background:**

This case involves the application of The Convention on the Transfer of Sentenced Persons ("Convention"), 35 U.S.T. 2867. In certain circumstances, the Convention allows persons convicted in foreign nations to serve their sentences in their home country. See e.g. Bishop v. Reno, 210 F.3d

---

[1]While being respectful of the court of appeals, it is necessary to touch upon that court's dismissal of Rickard's motion. 28 U.S.C. § 2244(b)(3)(B) requires a three judge panel of the court of appeals to determine a motion for authorization to file a second or successive application for writ of habeas corpus. However, Rickard's motion was decided by only one judge. And the court of appeals' order dismissed Rickard's motion, but did not give clear instructions to the parties or the district court. The order states: "[I]t is best to leave to the district court on remand any other questions concerning the Convention claim, including the question whether Rickard's claim on the merits satisfies the substantive requirements of § 2254 or any other source of federal relief." Compare Jacobs v McCaughtry, – F.3d –, No. 01-1847, 2001 WL 487363 at *2 (7th Cir. May 9, 2001) (dismissing as unnecessary a motion for authorization to file a second or successive habeas petition, and instructing the district court to accept the filing of the petition); Walker v. Roth, 133 F.3d 455, 455 (7th Cir. 1997) (same, and remanding the case). The court presumes that the Seventh Circuit's order is valid, and that it orders this court to review Rickard's § 2254 claims on their merits. The court does not presume that the Seventh Circuit's order requires the court to address the merits of Rickard's § 1983 and mandamus claims, which are not properly before the court. See infra pp. 7-9 & 13-15.

1295, 1298-1304 (11th Cir. 2000) (discussing the Convention). Rickard is a British citizen, currently incarcerated in Illinois, seeking to serve the remainder of his sentence in the United Kingdom.

Rickard was convicted in Illinois state court for the 1978 murder of a co-worker.[2] His original sentence was 100-300 years, but he successfully challenged that sentence on direct appeal. On remand, the trial court imposed a sentence of 40-120 years, which Rickard also appealed. (See Resp. Ex. B.) On November 15, 1983, the Illinois Appellate Court granted relief, and set his sentence at 40-80 years incarceration. (Id. at 5.)

The Convention became effective in the United States on July 1, 1985. See 35 U.S.T. 2867, 2868-89. Consistent with the terms of the Convention, on July 9, 1985, the United States Department of Justice notified Rickard that he was a potential candidate for transfer to the United Kingdom. (See Am. Pet. Ex. 2.) The notice gave Rickard the option to indicate whether he had an interest in obtaining a transfer. (See id.) The record is not clear as to whether Rickard requested a transfer at that time. The copy of the notice Rickard attaches to this petition does not reflect Rickard's interest or non-interest in transfer. (See id.) But in a pleading Rickard later submitted to the Circuit Court of Cook County, he wrote that in July 1985 he checked the appropriate box on the notice to indicate his interest in being transferred, and that neither the United States Department of

---

[2]For a detailed description of Rickard's crime and some of the procedural history of this case, see United States ex. rel. Christopher Rickard v. Haws, No. 87 C 2238, 1988 WL 33835 at *3 (N.D. Ill. April 7, 1988) (denying habeas claims on their merits).

Justice nor the Illinois Department of Corrections responded to his interest. (See Am. Pet. Ex. 24 pg. 4 (marked "Page Three od [sic] seven pages").)[3]

In April 1996, Rickard learned that his step-mother, who lived in England, was dying.[4] Out of a desire to see her before she died, Rickard began efforts to obtain a transfer to the United Kingdom. Rickard claims that he first made an oral request (he does not say of whom) for voluntary repatriation to the United Kingdom on compassionate grounds.

On June 12, 1996, Rickard made a written request to the Illinois Department of Corrections ("IDOC") to be transferred to the United Kingdom pursuant to the Convention. In July 1996, Rickard sent another letter to IDOC explaining his desire to see his step-mother before she died. At the time Rickard initiated these efforts to be transferred, he had pending two lawsuits against IDOC concerning the alleged loss of his radio and a medicaid issue. In August 1996, IDOC informed Rickard that it would not process his transfer request until these two lawsuits were resolved. (See Am. Pet. Ex. 29.) Rickard responded by voluntarily dismissing both suits. (See id.) At the time of dismissal, one suit was pending in the Illinois Court of Claims, and the other was pending in the Seventh Circuit. (See id.)

In January 1997, IDOC indicated its support for Rickard's transfer, and sent his application to the United States Department of Justice for its review and approval. On August 8, 1997, the

---

[3]These facts cast doubt on the Seventh Circuit's observation that Rickard could not have raised the Convention as a basis for habeas relief in his 1987 habeas petition. (See Am. Pet. Appx. A.) The Convention became effective in 1985, and Rickard had notice of its existence. Thus, the Convention was available to Rickard at the time he sought habeas relief in 1987. He did not raise the argument at that time, but it was available to him.

[4]Rickard's brief refers to both his mother and his step-mother as being ill, but it appears that it was his step-mother who was ill in 1996. Rickard's step-mother died in 1997.

United States Department of Justice gave its preliminary approval for Rickard's transfer, and forwarded Rickard's materials to HM Prison Service in the United Kingdom for its consideration.

Rickard's transfer application hit a snag on September 30, 1997, when HM Prison Service indicated it would not accept Rickard's indeterminate sentence of 40-80 years because such a sentence is inconsistent with English law. HM Prison Service wrote that the only indeterminate sentence England recognizes is a life sentence, which would be an aggravation of Rickard's 40-80 year term, and the Convention expressly forbids transfers that aggravate sentences. See e.g. Convention, Art. 10(2), 35 U.S.T. 2867, 2876. HM Prison Service suggested to both the United States Department of Justice and Rickard that his indeterminate sentence be converted to a determinate sentence. If that were to occur, the United Kingdom indicated it would reconsider Rickard's transfer.

In November 1997, Rickard began his attempts to "convert"[5] his sentence from an indeterminate one to a determinate one by filing a grievance with IDOC and sending a letter to then Governor Edgar, asking that his sentence be converted to a 40 year determinate sentence. (See Am. Pet. Ex. 11, pg. 2.) Governor Edgar did not respond to Rickard's request, but IDOC informed Rickard that it did not have the authority to change his sentence without a court order. Thus, Rickard's transfer application reached an impasse. The United Kingdom would not accept his indeterminate sentence, and IDOC could not change his sentence without a court order.

In January 1998, Rickard filed a petition for writ of mandamus in the Illinois Supreme Court. The petition asked the Illinois Supreme Court to order IDOC to take steps necessary to ensure

---

[5]Rickard uses the term "convert" to describe changing his indeterminate sentence to a determinate sentence.

Illinois' participation in the Convention. As part of this petition, Rickard argued that his sentence should be converted to a 40 year sentence. Rickard further argued that a 40 year sentence equates to 20 years with credit for good time, which he had already served. (Am. Pet. Ex. 21, pp. 1, 6, 7.) The Illinois Supreme Court denied the petition without opinion. (Am. Pet. Ex. 23.)

On October 28, 1998, Rickard filed a petition for relief from judgment in the Circuit Court of Cook County, Criminal Division, asking that court to re-sentence him to a determinate sentence under 730 ILCS 5/5-8-1. In a one page order, the court denied the petition as untimely, frivolous, and without merit. (Am. Pet. Ex. 25.) Rickard sought leave to appeal the decision, which the Illinois Appellate Court denied without prejudice due to an incomplete record. (Am. Pet. Ex. 27.) Rickard then sought leave to appeal to the Illinois Supreme Court, and was denied.

In June 1999, Rickard brought the habeas petition that this court dismissed for lack of subject matter jurisdiction. Rickard, 108 F. Supp. 2d at 1020-22. Upon the Seventh Circuit's dismissal of his motion for leave to file a second or successive petition for collateral review, Rickard brings this amended petition. Rickard alleges a mixed bag of violations of federal and state law by IDOC for its handling of his transfer application and refusal to convert his sentence without a court order. He claims that the Convention gives him a federal right to be transferred to the United Kingdom, and that Illinois' refusal to convert his sentence to one that is acceptable to the United Kingdom violates the Illinois treaty enabling statute (730 ILCS § 5/3-2-3.1), and violates his federal Constitutional rights to due process and equal protection of the laws. Rickard seeks the following relief: (1) a writ of mandamus to IDOC ordering it to convert his sentence to a determinate one, and ensuring that he is transferred to the United Kingdom; (2) an order to the Illinois state court to re-sentence him to a determinate term, while taking into account all mitigating factors, such as age, time served, model

6

behavior and educational efforts, and while forbidding any penalties against him, such as ignoring the possibility of imminent release based on parole board standards; (3) monetary damages for loss of consortium for not being able to see his step-mother before she died; and (4) concerning the two lawsuits he voluntarily dismissed to expedite his transfer request, an award of the damages he sought in the two suits, or alternatively, an order reinstating the suits.[6]

## II. DISCUSSION

The court will first address Rickard's request for a writ of mandamus. The court will then separate Rickard's § 2254 claims from his § 1983 claims and analyze the claims under the substantive and procedural requirements of those statutes.

### A. Writ of Mandamus:

Illinois has enacted enabling legislation to help effectuate federal prisoner transfer treaties. The statute states:

> If a treaty in effect between the United States and a foreign country provides for the transfer or exchange of convicted offenders to the country of which they are citizens or nationals, the Governor may, on behalf of the State and subject to the terms of the treaty, authorize the Director of Corrections to consent to the transfer or exchange of offenders and take any other action necessary to initiate the participation of this State in the treaty.

730 ILCS 5/3-2-3.1. Rickard argues strenuously that this statute imposes a duty on IDOC to convert his sentence and ensure his transfer. He complains that IDOC's refusal to act without a court order violates this duty, and seeks a mandamus from this court ordering IDOC to comply with the statute.

The court does not have jurisdiction to rule on a petition for writ of mandamus ordering

---

[6]Rickard states in his reply brief that the suit concerning the loss of his radio is now moot. (Reply at pg. 14.)

IDOC to comply with the Illinois enabling statute.[7] A federal court does not have jurisdiction to issue a mandamus to state officials for violating duties imposed by state law. Coniston Corp. v. Village of Hoffman Estates, 844 F.2d 461, 469 (7th Cir. 1988); see also Shegog v. Board of Educ., 194 F.3d 836, 837-38 (7th Cir. 1999) (discussing federalism issues and stating "'[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law.'") (quoting Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 106 (1984)); Jones v. Burris, 825 F. Supp. 860, 861 (N.D. Ill. 1993) (dismissing a state prisoner's petition for mandamus). IDOC's alleged non-compliance with the Illinois treaty enabling statute is an issue of state law that is not within the court's jurisdiction. Coniston Corp., 844 F.2d at 469.

Moreover, the Illinois Supreme Court has already denied Rickard's earlier petition seeking mandamus on the same issues. (See Am. Pet. Ex.'s 21 & 23.) The Rooker-Feldman doctrine instructs that federal district courts do not have subject matter jurisdiction to review decisions of state courts. See Levin v. Attorney Registration and Disciplinary Commission, 74 F.3d 763, 766 (7th Cir. 1996) (federal district courts "'do not have jurisdiction . . . over challenges to state-court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional.'") (quoting District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 486 (1983)); see also Remer v. Burlington Area Sch. Dist., 205 F.3d 990, 996 (7th Cir. 2000) (discussing the Rooker-Feldman doctrine). Although the pivotal inquiry is whether the party seeks to set aside a state court judgment or brings an independent claim, the

---

[7]The court addresses Rickard's claim that IDOC's refusal to convert his sentence violated his federal constitutional rights to due process and equal protection infra at pp. 17-19.

doctrine also bars federal courts from granting relief that would effectively void a state court judgment. See Remer, 205 F.3d at 996; Landers Seed Co., Inc. v. Champaign Nat. Bank, 15 F.3d 729, 732 (7th Cir. 1994). Here, Rickard asks the court to grant a petition for mandamus that is substantially identical to one the Illinois Supreme Court rejected in 1998. Ordering the mandamus (which the court cannot do anyway) would effectively void the Illinois Supreme Court's ruling. Therefore, the claim is barred by the Rooker-Feldman doctrine.[8]

## B.  28 U.S.C. § 2254 and 42 U.S.C. § 1983:

The court's next task is to separate Rickard's § 2254 claims from his § 1983 claims. Numerous decisions from the Seventh Circuit address this issue. See e.g. Dewalt v. Carter, 224 F.3d 607, 613-18 (7th Cir. 2000); Moran v. Sondalle, 218 F.3d 647, 650-51 (7th Cir. 2000); Pischke v. Litscher, 178 F.3d 497, 499-500 (7th Cir. 1999); Sylvester v. Hanks, 140 F.3d 713, 714 (7th Cir. 1998); Clayton-El v. Fisher, 96 F.3d 236, 241-43 (7th Cir. 1996); Falcon v. United States Bureau of Prisons, 52 F.3d 137, 138-39 (7th Cir. 1995); Graham v. Broglin, 922 F.2d 379, 380-82 (7th Cir. 1991); Viens v. Daniels, 871 F.2d 1328 (7th Cir. 1989). Usually, the line between § 2254 and § 1983 is easy to locate, but that is not always the case. Moran, 218 F.3d at 650-51; Graham, 922 F.2d at 380-82; Clayton-El, 96 F.3d at 241-43. In Graham, the Seventh Circuit generalized that habeas corpus is the appropriate remedy for a prisoner "seeking what can fairly be described as a quantum change in the level of custody – whether outright freedom, or freedom subject to the limited

---

[8]The court notes that the Rooker-Feldman doctrine does not apply where there is specific statutory authority to bring a federal collateral attack on a state court judgment, such as a habeas corpus proceeding. See Levin, 74 F.3d at 766. The court's discussion in this section is limited to Rickard's petition for writ of mandamus, which does not fall within the scope of § 2254(a). The court analyzes Rickard's § 2254 claims infra at pp 15-23.

reporting and financial constraints of bond or parole or probation, or the run of the prison in contrast to the approximation to solitary confinement that is disciplinary segregation. . . ." 922 F.2d at 381. "But if [the prisoner] is seeking a different program or location or environment, then he is challenging the conditions rather than the fact of his confinement, and his remedy is under civil rights law, even if . . . the program or location or environment that he is challenging is more restrictive than the alternative that he seeks." Id.; compare Clayton-El, 96 F.3d at 242 (stating that the distinction between habeas corpus and civil rights focuses on the injury claimed rather than the relief sought) (citing Heck v. Humphrey, 114 S. Ct. 2364, 2369-70 (1994)). Moran firmed up the line between § 2254 and § 1983 by holding that "[s]tate prisoners who want to challenge their convictions, their sentences, or administrative orders revoking good-time credits or equivalent sentence-shortening devices, must seek habeas corpus, because they contest the fact or duration of custody." 218 F.3d at 650-51 (citing Preiser v. Rodriguez, 411 U.S. 475 (1973) and Edwards v. Balisok, 520 U.S. 641 (1997)). "State prisoners who want to raise a constitutional challenge to any other decision, such as transfer to a new prison, administrative segregation, exclusion from prison programs, or suspension of privileges, must instead employ § 1983 or another statute authorizing damages or injunctions. . . ." Moran, 218 F.3d at 650-51 (also acknowledging that there may be rare cases at the edges of this dichotomy).

Guided by these principles, it is simple to separate many of Rickard's claims. The claims for his alleged loss of consortium and forced dismissal of two other lawsuits implicate civil rights rather than habeas corpus. There is nothing about these claims that goes to the fact or duration of his custody. See id.; Graham, 922 F.2d at 381. Thus, they must be brought under § 1983 rather than § 2254.

Likewise, Rickard's ultimate demand to be transferred to the United Kingdom is a civil rights claim. It is well settled that a state prisoner's claim to be placed in a particular institution is one that exists, if at all, under civil rights laws. Moran, 218 F.3d at 650-651; Graham, 922 F.2d at 381. And it makes no difference that Rickard is seeking an international transfer pursuant to the Convention instead of the more usual suit to demand or contest an intrastate transfer to a different institution. See Scalise v. Thornburgh, 891 F.2d 640, 649 n. 10 (7th Cir. 1989) (noting that the same analysis applies to prisoners seeking an international prison transfer and those seeking an intrastate transfer). Rickard also alleges deprivations of his rights to equal protection and due process. To the extent he is seeking monetary relief rather than speedier release from custody for these alleged deprivations, he must proceed under § 1983. Preiser, 411 U.S. at 484-90 & 500.

Rickard's claim that he is entitled to have his indeterminate sentence converted to a determinate sentence is not as clear cut.[9] Rickard asks the court to order the Illinois state court to convert his sentence, and to take into account all mitigating factors, such as age, time served, good behavior, and educational efforts. At the same time, Rickard wants this court's order to prohibit the Illinois court from imposing any punitive measures during re-sentencing, such as ignoring the possibility of imminent parole.[10] Rickard's ultimate goal may be a transfer to the United Kingdom, but he cannot obtain that without changing his sentence, and the converted sentence he seeks is

---

[9]The parties did not cite, and the court's research did not find, a Seventh Circuit case deciding the issue of whether converting an indeterminate sentence to a determinate one is a habeas claim or a civil rights claim. At least one decision from the Tenth Circuit treats the issue as a habeas claim, but does not analyze the issue. See Murray v. Cowley, 913 F.2d 832 (10th Cir. 1990).

[10]Rickard's request in this petition is consistent with the position that he took in November 1997 and January 1998, when he asked then Governor Edgar and the Illinois Supreme Court to convert his sentence to a 40 year determinate sentence.

shorter than the one imposed by the Illinois state courts. As Graham and the other authorities discussed above make clear, such a request involves a quantum change in the level of custody, and must be brought as a habeas petition. Graham, 922 F.2d at 381; see also Preiser, 411 U.S. at 499-500 (holding that habeas is the proper remedy if granting the relief sought will result in a speedier release from custody); Moran, 218 F.3d at 650-51 (holding that any challenge to the duration of custody is a habeas claim); Heidelberg v. Illinois Prisoner Review Board, 163 F.3d 1025, 1026-27 (7th Cir. 1998) (noting the well established law that prisoners do not have the right "'to be conditionally released before the expiration of a valid sentence'") (quoting Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex, 442 U.S. 1, 7 (1979)). It was on this understanding, that Rickard is seeking a change in the duration of his custody, that the court determined that Rickard's 1999 petition was second or successive to his 1987 petition. See Rickard, 108 F. Supp. 2d at 1020-21.

The Seventh Circuit, however, saw Rickard's request to change his sentence somewhat differently. The Court's order noted that, logically, Rickard's efforts to convert his sentence for the purpose of a transfer was not an attack on the sentence itself. (See Am. Pet. App. A.) The Court went on to say: "Although Rickard would like the Illinois courts to convert it to a 40-year determinate sentence, there is nothing logically that would prevent them from converting it to an 80-year determinate sentence (or anything else within the earlier range) if they have the power to take this step at all." (Id.) The Seventh Circuit left it to this court to determine whether Rickard's claim on its merits "satisfies the substantive requirements of § 2254 or any other source of federal relief." (Id.) This order suggests that Rickard's request to have his sentence converted is cognizable under

both § 2254 and civil rights laws, such as § 1983.[11]  <u>Compare</u> <u>Moran</u>, 218 F.3d at 650-51 (holding

that a state prisoner's federal challenge to the fact or duration of custody is a habeas claim, and any

other challenge is a civil rights claim).  Therefore, the court will analyze Rickard's request to have

his sentence converted under both statutes.  The court applies § 2254 to Rickard's request for a

determinate sentence that takes into account all mitigating factors, and is therefore a shorter sentence.

<u>See</u> <u>Moran</u>, 218 F.3d at 50-51; <u>Heidelberg</u>, 163 F.3d at 1026; <u>Graham</u>, 922 F.2d at 381.  To the

extent Rickard has done so, the court applies § 1983 to Rickard's request to have his sentence

converted to an 80 year determinate sentence to facilitate transfer.[12]

**1.    The § 1983 Claims Are Not Properly Before the Court:**

The Prisoner Litigation Reform Act ("PLRA"), which applies to prisoner § 1983 suits,  and

the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which governs § 2254 claims, "have

different procedural requirements and different potential consequences."  <u>Moran</u>, 218 F.3d at 651;

---

[11]Explicit in the Seventh Circuit's order is that Rickard's current request to convert his sentence, while cognizable under § 2254, is not second or successive to his 1987 habeas petition attacking his conviction, which was denied on the merits.  <u>Contra</u> <u>Talbott v. Indiana</u>, 226 F.3d 866, 869 (7th Cir. 2000) (noting that "[f]ederal law allows only one round of collateral review as of right, so prisoners should choose their issues wisely.");  <u>Potts v. United States</u>, 210 F.3d 770, 770 (7th Cir. 2000) (noting that a prisoner is entitled to only one opportunity for collateral review on the merits);  <u>Johnson v. United States</u>, 196 F.3d 802, 804 (7th Cir. 1999) (describing the paradigm second or successive collateral attack).

[12]Assuming that setting Rickard's sentence at the maximum 80 year term to facilitate transfer is a civil rights claim rather than a habeas claim, he did not seek that remedy in case number 99 C 4457, nor does he seek it in this case.  His request was, and is, to have his sentence converted from an indeterminate sentence of 40-80 years to a determinate sentence that gives him credit for his age, time served, good behavior, and educational efforts, while keeping open the possibility that he may be paroled at any time.  In this light, Rickard's request is analogous to a state prisoner asking a federal court to order his parole or set a definite release date that is shorter than his maximum sentence.  <u>Compare</u> <u>Heidelberg</u>, 163 F.3d at 1026-27 (habeas case holding that Illinois state prisoners do not have a liberty interest in obtaining parole).

Sylvester, 140 F.3d at 714. The differences include, but are not limited to, the amount of the required filing fees, the "three strikes" rule of the PLRA, the strict exhaustion requirements of the AEDPA, and different procedural rules, i.e. the Rules Governing Habeas Corpus. See Walker v. O'Brien, 216 F.3d 626, 631-32 (7th Cir. 2000); Moran, 218 F.3d at 651; Pischke, 178 F.3d at 500; Sylvester, 140 F.3d at 714. Because of these differences, the court should dismiss without prejudice a § 1983 claim that has been improperly filed under § 2254. See Moran, 218 F.3d at 651; Pischke, 178 F.3d at 500. In this case, Rickard styled his amended petition as including claims under both § 1983 and § 2254, and argues in his briefs that his claims are cognizable under both statutes. But Rickard docketed the suit as a § 2254 habeas petition and paid the accompanying $5.00 fee for a § 2254 case rather than the $150.00 fee required for a § 1983 case. The court is also unaware of Rickard's status under the PLRA's three strikes rule. See 28 U.S.C. § 1915(g). Moreover, the procedural status of this case makes it difficult for the court to address the § 1983 claims. The court may resolve a § 2254 claim on the petition and answer, see Rule 8 of the Rules Governing Habeas Corpus, but § 1983 claims must proceed according the Federal Rules of Civil Procedure. The disposition both parties seek on the § 1983 claims would most likely be summary judgment under Federal Rule of Civil Procedure 56, and the pleadings are not in a state that Rule 56 would apply. For all of these reasons, the court dismisses without prejudice all of Rickard's claims that are cognizable under § 1983. Those are: (1) the claim for loss of consortium; (2) the request to be transferred to the United Kingdom; (3) the request for the damages Rickard was seeking in his two lawsuits, and the alternative request to reinstate those suits; (4) Rickard's request, if he has even made it, to have his indeterminate 40-80 year sentence converted to a determinate 80 year sentence;

14

and (5) any monetary relief he may seek for the alleged violations of his equal protection and due process rights.

With this ruling, Rickard may re-file these claims as a § 1983 suit so long as he complies with all applicable requirements. Pischke, 178 F.3d at 499-500. This is not to give Rickard false hope on the merits of these claims. It is well settled that there is no Constitutional right to a transfer between prisons, whether international, interstate, or intrastate. See Moran, 218 F.3d at 650-51; Scalise, 891 F.2d at 649 n. 10; see also Pischke, 178 F.3d at 499-500 (affirming the dismissal of habeas suits filed to contest transfers to private prisons, and cautioning that refiling the cases under § 1983 would be futile). And, as discussed below, Rickard's reliance on federal Constitutional law and the Convention to convert his sentence is without merit, whether construed as a civil rights claim or a habeas claim.

### 2. The § 2254 Claims Are Without Merit:[13]

It is not easy to obtain relief under § 2254. The statute has many procedural requirements, including exhaustion of state court remedies and procedural default, and affords relief only on narrow substantive grounds. The court briefly addresses the procedural issues, and then delves into the merits of Rickard's claims.

### a. Exhaustion and Procedural Default:

Section 2254 requires a habeas petitioner to exhaust the remedies available in state court prior to pursuing federal habeas relief. See 28 U.S.C. § 2254(b)(1)(A); O'Sullivan v. Boerckel, 526 U.S. 838, 842-43 (1999); Spreitzer v. Schomig, 219 F. 3d 639, 644-45 (7th Cir. 2000). A habeas

---

[13]The parties do not raise, and the court does not address, the timeliness of Rickard's petition. See 28 U.S.C. § 2244(d).

petitioner is also procedurally barred from raising claims in a federal habeas court that he did not fairly present to the state court. See O'Sullivan, 526 U.S. at 848; cf. Rodriguez v. Scillia, 193 F.3d 913, 916 (7th Cir.1999) (discussing exhaustion of claims). Despite these rules, the court has the authority to deny a habeas petition on its merits notwithstanding failure to exhaust state court remedies. 28 U.S.C. § 2254(b)(2).

Also, federal habeas courts cannot review claims that the state court has disposed of on state law grounds. Lambrix v. Singletary, 520 U.S. 518, 523-24 (1997); see also Coleman v. Thompson, 501 U.S. 722, 729 (1991) (noting that federal habeas relief is not available if the state court decision rests on state law that "is independent of the federal question and adequate to support the judgment."). When a state court has reviewed federal claims on their merits, federal habeas review is governed by the deferential standards of § 2254(d). See Williams v. Taylor, 120 S. Ct. 1495, 1516-23 (2000) (opinion of O'Connor, J., analyzing and interpreting § 2254(d)).

Rickard faces these procedural hurdles. Part of Rickard's argument is that he has been denied due process and equal protection of the law. Respondent argues that these Constitutional issues are procedurally barred because Rickard did not present them to the Illinois courts. Respondent also asserts that the Circuit Court of Cook County's order dismissing his October 1998 petition for relief from judgment as untimely represents an independent and adequate state law ground that is not subject to review by this court. While not minimizing the importance of Respondent's arguments, the court declines to decide the case on these grounds. The Seventh Circuit's order directs the court to address the merits of Rickard's habeas claims. (Am. Pet. Appx. A.) Moreover, the sparseness of the state court's orders makes it difficult to determine whether their decisions actually rest on independent and adequate state grounds such as timeliness or waiver. As the Supreme Court noted

in <u>Trest v. Cain</u>, sometimes the "longer . . . way 'round is the shortest way home." 522 U.S. 87, 92 (1997).

### b. The Merits:

At last, the court turns to the merits of Rickard's habeas claims. Section 2254 allows federal courts to entertain a petition for writ of habeas corpus only when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Here, Rickard claims two grounds for habeas relief: (1) Illinois deprived him of his Fourteenth Amendment rights to due process and equal protection of the laws by refusing to convert his sentence to facilitate his transfer; and (2) a federal right to be transferred pursuant to the Convention. The court addresses each in turn.

### i. Rickard Has Waived The Due Process and Equal Protection Arguments:

Rickard loosely asserts that IDOC and the Illinois state courts have denied him his Fourteenth Amendment rights to due process and equal protection of the laws by refusing to convert his sentence. Rickard, however, fails to support either argument with pertinent authority or a cogent argument. As to the "due process" claim, it is not at all clear whether he is asserting a denial of substantive due process or procedural due process. <u>See generally LC&S, Inc. v. Warren County Area Plan Comm'n</u>, 244 F.3d 601, 602-03 (7th Cir. 2001) (discussing procedural due process); <u>Coniston</u>, 844 F.2d at 466-67 (discussing substantive due process). For example, Rickard asserts that one of the proceedings in the Illinois courts was ex parte (<u>see</u> Am. Pet. Count I, ¶ 46), which potentially involves a procedural due process claim. <u>See LC&S, Inc.</u>, 244 F.3d at 602-03. On the other hand, Rickard also asserts that Illinois' refusal to grant him access to the Convention involves

his Fourteenth Amendment due process rights (see e.g. Am Pet. Count I, ¶ 51), and that one of his state court actions was dismissed for want of prosecution without appointment of counsel to represent him (see id. at Count III, ¶ 61). These claims potentially involve substantive due process rights, which involve a host of thorny issues and require painstaking development. See e.g. County of Sacramento v. Lewis, 118 S. Ct. 1708 (1998); Armstrong v. Squadrito, 152 F.3d 564, 570 (7th Cir. 1998) (citing cases). It is Rickard's burden to present these issues clearly and to support them with appropriate authority. Doherty v. City of Chicago, 75 F.3d 318, 324 (7th Cir. 1996) (noting that it is up to the parties, not the court, to construct the arguments); see also United States v. Jones, 224 F.3d 621, 626 (7th Cir. 2000) (noting that an undeveloped argument speaks to its paucity, and refusing to consider the argument). Rickard fails to do so, and the court will not address these undeveloped arguments.

Turning to the equal protection argument, Rickard fails to identify a protected class to which he belongs. For example, he seems to assert that prisoners incarcerated in other states (Connecticut, New York, Ohio, and Washington) have a greater chance at transfer under the Convention because those states have more effective treaty enabling legislation than Illinois. (Am. Pet. ¶ 38.) On this basis, Rickard asserts that Illinois deprives him of equal protection of the Convention. (See id. at ¶ 39.) Rickard also alleges that he *may* be a member of protected class because of his age and/or alienage. (Reply at pg 7, emphasis added.) The age and alienage allegations are made without factual support or citation to supporting relevant authority.[14] Compare Wong v. Warden, 999 F.

---

[14]For example, Rickard cites Schlesinger v. Ballard, 419 U.S. 498, 500 n. 3 (1978) for the proposition that the Fifth Amendment's due process clause prohibits the Federal Government "from engaging in discrimination that is so unjustifiable as to be violative of due process." While this is an accurate statement of the law, it is inapposite to this case, which involves a state government's

Supp. 287 (N.D.N.Y. 1998) (analyzing a § 2241 habeas petition alleging an equal protection claim based on race for denial of the petitioner's request for a transfer under the Convention), aff'd, 171 F.3d 148 (2nd Cir. 1999). Again, it is not the court's duty to construct Rickard's argument for him. Doherty, 75 F.3d at 324. Accordingly, the court finds that Rickard waived the equal protection arguments that he intended to base on other state's laws, age and alienage.

Moreover, Rickard quickly retreats from his age and alienage assertion by arguing that even if he is not a member of a protected class, Illinois still violated his equal protection (and due process) rights because its actions are not rationally related to a legitimate state interest. (Reply at pg. 7.) Rickard cites no authority for his "class of one" argument, but such claims are cognizable. See Village of Willowbrook v. Olech, 120 S. Ct. 1073, 1074-75 (2000). In Olech, the Supreme Court held that a § 1983 plaintiff can pursue a class of one equal protection claim if the state government intentionally treats the plaintiff differently from others similarly situated, and there is no rational basis for the different treatment. Id. Assuming, without deciding, that class of one equal protection claim is cognizable under § 2254, see Wong, 999 F. Supp. at 290 (collecting authority), Rickard fails to demonstrate that the necessary elements exist. He presents no evidence of any other similarly situated prisoners, and no evidence that the state of Illinois intentionally treated him differently from those other similarly situated prisoners. This failure to present evidence is a waiver of the claim.

### ii. The Convention Imparts No Federal Right to a Transfer and No Duty on the State of Illinois to Convert Rickard's Sentence:

Rickard correctly asserts that a treaty entered into by the United States is federal law and is cloaked in the Supremacy Clause of Article VI of the United States Constitution. Whitney v.

---

actions and the Fourteenth Amendment.

Robertson, 124 U.S. 190, 194 (1888) (holding that under the Constitution a treaty is on equal footing with federal legislation); see also United States v. Chaparro-Alcantara, 226 F.3d 616, 621 (7th Cir. 2000) (and cases cited therein). Past this, Rickard's argument falls apart. He claims that the Convention gives him a right to be transferred, and that Illinois has an obligation to take all steps necessary, including converting his sentence, so as to not infringe his right to a transfer. Neither proposition exists in the law.

To begin, Illinois is not a party to the Convention, and is not bound by any of its terms. See Hogan v. Koenig, 920 F.2d 6, 8 (9th Cir. 1990) (analyzing a similar treaty between the United States and Canada, and holding that the State of California, not being a signatory to the treaty, is not bound to the treaty language); Hart v. Wilson, No. C 96-0247 SI, 1996 WL 371430, * 2 (N.D. Cal. June 25, 1996) (analyzing the same Convention at issue in the case at bar, and finding that the State of California is not a party to the Convention and that California prison officials are not bound to the Convention's terms). It is well established that international treaties, such as the Convention at issue here, are agreements between sovereign nations.[15] See e.g. Matta-Ballesteros v. Henman, 896 F.2d 255, 259 (7th Cir. 1990).

Despite this, Rickard argues that IDOC's refusal to convert his sentence thwarts the Convention and violates the Supremacy Clause. Rickard's authority for this proposition is a law student's note in the Fordham law review. The student author points to no authority for his assertion that a state's treaty enabling legislation and application thereof may violate the Supremacy Clause if the legislation or its application thwarts the Convention's goals. Contra Hogan, 920 F.2d at 8

---

[15]The signatories to the Convention are Austria, Belgium, Cyprus, Denmark, France, Germany, Greece, Iceland, Ireland, Turkey, the United Kingdom, Canada, and the United States.

(holding that California is not bound by an international prisoner transfer treaty); Hart, 1996 WL 371430 at * 2 (same). Rickard's authority is not persuasive.[16] But, even if it were, Rickard's argument still fails because the Convention does not give Rickard a right to a transfer.

The Convention imparts no individual right for a foreign national prisoner to be transferred to his home country. The general rule is that treaties are agreements between governments, and individuals do not have standing to assert a private right in the absence of a protest by one of the treaty's signatories. See United States v. Chaparro-Alcantara, 226 F.3d 616, 620-21 (7th Cir. 2000) (citing Matta-Ballesteros, 896 F.3d at 259); cf. United States v. Carrillo, 70 F. Supp. 2d 854, 857-59 (N.D. Ill. 1999) (chambers opinion analyzing whether Article 36 of the Vienna Convention provides a private right of action). In this case, neither the United States nor the United Kingdom have protested the impasse over Rickard's transfer. Thus, under the general rule, Rickard does not have standing to assert an individual right to be transferred. See Matta-Ballesteros, 896 F.3d at 259-60 (finding no violation of international law in the absence of an official protest). Nevertheless, the court will examine the Convention to ensure that it imparts no individual right to Rickard.

Treaty analysis begins with the treaty language. See Marquez-Ramos v. Reno, 69 F.3d 477, 480 (10th Cir. 1995) (citing Eastern Airlines, Inc. v. Floyd, 499 U.S. 530, 534 (1991) (in turn quoting Volkswagenwerk Aktiengesellschaft v. Schlunk, 486 U.S. 694, 699 (1988)). If the language is clear and unambiguous, the court does not look beyond the written words. Marquez – Ramos, 69 F.3d at 480 (citing cases). In this case, the plain language of the Convention demonstrates that transfer

---

[16]The court recognizes that state laws that are inconsistent with United States foreign policy may be invalid under the Supremacy Clause. See e.g. Crosby v. Nation Foreign Trade Council, 530 U.S. 363 (2000). The Illinois treaty enabling statute is not such a law.

is permissive rather than mandatory. Article 3 of the Convention sets for the conditions for transfer, and states:

> 1. A sentenced person may be transferred under this Convention only on the following conditions:
>  a. if that person is a national of the administering State[17];
>  b. if the judgment is final;
>  c. if, at the time of receipt of the request for transfer, the sentenced person still has at least six months of the sentence to serve or if the sentence is indeterminate;
>  d. if the transfer is consented to by the sentenced person or, where in view of his age or his physical or mental condition one of the two States considers it necessary, by the sentenced person's legal representative;
>  e. if the acts or omissions on account of which the sentence has been imposed constitute a criminal offence according to the law of the administering State or would constitute a criminal offence if committed on its territory; and
>  f. if the sentencing and administering States agree to the transfer.

Convention, Art. 3, 35 U.S.T. 2867, 2872. The first line of Article 3 is permissive. The sentenced person *may* be transferred if certain conditions are present. Id. Condition "f" allows transfer only *if both the sentencing state and the administering state agree to the transfer*. Id. This condition has not occurred because the United Kingdom has denied Rickard's request. Moreover, all the necessary conditions outlined in Article 3 are permissive, and impose no duty on either the sentencing State or the administering State to transfer a prisoner upon his or her request. See id. Accordingly, the court finds that the Convention imparts no individual right upon prisoners to obtain a transfer.

Every court addressing this issue has come to the same conclusion: there is no individual right to a transfer under the Convention. See Scalise, 861 F.2d at 649; see also Bishop, 210 F.3d at

---

[17]Under the Convention, the sentencing State is the nation that has sentenced the prisoner, and the administering State is the nation to which the prisoner may be transferred. In this case, the United States is the sentencing State, and the United Kingdom is the administering State. See Convention, Art. 1, 35 U.S.T. 2867, 2870.

1300 (dicta noting that the Convention is a question of comity between nations and not a personal right of the prisoner); Bagguley v. Bush, 953 F.2d 660, 661-63 (D.C. Cir. 1991) (analyzing the discretionary nature of the Convention and holding that it does not require the international transfer of prisoner upon request); Coleman v. Reno, 91 F. Supp. 2d 130, 132 (D.D.C. 2000) (transfer under the Convention is discretionary); Brancaccio v. Reno, 964 F. Supp. 1, 3 (D.D.C. 1997) (finding no violation of the Convention in the denial of a transfer request); Hart, 1996 WL 371430 at * 2 (no liberty interest in a transfer under the Convention); Bagguley v. Matthews, No. 88-3486-R, 1992 WL 160945, *2 (D. Kan. June 3, 1992) (same); Wong v. Warden, 999 F. Supp. 287, 289-90 (N.D.N.Y. 1998) (same, but analyzing an alleged violation of equal protection), aff'd, 171 F.3d 148; cf. Marquez-Ramos v. Reno, 69 F.3d 477, 480-81 (10th Cir. 1995) (analyzing a similar treaty and finding no liberty interest in transfer); Hogan, 920 F.2d at 8 (same). Rickard cites no contrary authority. Accordingly, the court rejects Rickard's argument and finds that his § 2254 petition is without merit.

### III. CONCLUSION

For the foregoing reasons, the court denies Rickard's petition for writ of mandamus, dismisses without prejudice all claims that are cognizable under 42 U.S.C. § 1983, and denies on their merits all claims that arise under 28 U.S.C. § 2254.

IT IS SO ORDERED.

ENTER:

CHARLES RONALD NORGLE, SR. Judge
United States District Court

DATED: 6/8/01